BRIAN L. BUDSBERG, WSBA#11225
Budsberg Law Group, PLLC
P.O. Box 1489
Olympia, WA 98507-1489
Telephone: (360) 584-9093
Facsimile: (360) 252-8333
Attorney for Debtor

HONORABLE PAUL B. SNYDER
Location Tacoma
Chapter 11

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re<br><br>PETTIT OIL COMPANY, INC.<br><br>Debtor. | No. 13-47285<br><br>DECLARATION OF CHRIS SATHER IN SUPPORT OF EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN POSSESSION FOR AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION FUEL AND LUBRICANT SUPPLIER CHARGES, (II) PAY PRE-PETITION AND POST-PETITION COMPENSATION, PAYROLL TAXES, AND OTHER RELATED EXPENSES AND (III) DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS AND HONOR PAYMENT |

I, Chris Sather, declare as follows:

1. I am President of Pettit Oil Company, Inc. ("Pettit").

2. Pettit, a subchapter S corporation located in Tacoma Washington, is a distributor of bulk oil, gas, diesel and lubricant products. Pettit owns and operates a business which provides over 10,000 customers, including transportation companies, industrial goods and

DECLARATION OF CHRIS SATHER IN SUPPORT OF EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN POSSESSION FOR AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION FUEL AND LUBRICANT SUPPLIER CHARGES, (II) PAY PRE-PETITION AND POST-PETITION COMPENSATION, PAYROLL TAXES, AND OTHER RELATED EXPENSES AND (III) DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS AND HONOR PAYMENT

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-47285-PBS    Doc 3    Filed 11/25/13    Ent. 11/25/13 15:01:54    Pg. 1 of 7

services producers, retailers, agricultural producers, families, military installations, counties and other municipalities. Pettit's customers are located primarily throughout the Western Washington area. Pettit has office locations in Lakewood, Hoquiam, Port Angeles, Bremerton, Forks, and Everett.

5. As of November 22, 2013, Pettit reported assets of approximately $18,689,902.04 and liabilities of approximately $22,472,932.18

6. Pettit's has two potential secured lenders: Key Bank which is claiming a secured interest in Pettit's "assets" and U.S. Bank which is asserting a secured interest in general intangibles, equipment, inventory, tangibles, and other assets of Pettit. Presently, Pettit owes Key Bank approximately $11,345,648.97 and U.S. Bank $8,824,819.

7. Pettit is current with its suppliers, taxes, and payroll.

8. Following the execution of the Key Bank Amended and Restated Credit Agreement, Pettit was granted, overdraft protection from Key Bank to cover the payment of items presented for payment in excess of the credit available under the Amended and Restated Credit Agreement. At the time of the filing the net amount of these overdrafts is approximately $5,000,000.00.

9. In 2012, Pettit transported over 96,427,416 million gallons of petroleum products, generated revenues of approximately $319,134,322 and EBIDTA in excess of $1,340,567.73. In 2013, to date, Pettit transported over 50,334,057 million gallons of petroleum products, generated revenues of approximately $172,223,261.08 and EBIDTA in excess of $6,113,750.36.

10. Pettit is asking that the Court authorize Pettit's use of prepetition bank accounts and require that these Bank honor prepetition payments to suppliers of Pettit because authorizing

DECLARATION OF CHRIS SATHER IN SUPPORT OF EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN POSSESSION FOR AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION FUEL AND LUBRICANT SUPPLIER CHARGES, (II) PAY PRE-PETITION AND POST-PETITION COMPENSATION, PAYROLL TAXES, AND OTHER RELATED EXPENSES AND (III) DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS AND HONOR PAYMENT

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-47285-PBS    Doc 3    Filed 11/25/13    Ent. 11/25/13 15:01:54    Pg. 2 of 7

these payments to suppliers is critical for Pettit's continued operation and overall reorganization. Pettit's customers transportation companies, industrial goods and services producers, retailers, agricultural producers, families, military installations, counties and other municipalities. Pettit has maintained these customers because they have served them without interruption through adverse weather conditions. These customers require consistent and continuous supply, seven days a week. Because the customers' needs are quite literally incessant, Pettit cannot maintain its customer base without daily purchases and deliveries of fuel and lubricants.

Any interruption in the supply of fuel and lubricants to Pettit would, within less than 24 hours, result in interruption of deliveries to these customers. Interruptions in deliveries would be very likely to result in the immediate and irreparable loss of customers, and significant damages to those customers' operations. These customers are vital to Pettit's survival.

11. Pettit's supply arrangements with the and lubricant suppliers (individually a "<u>Supplier</u>" and collectively the "<u>Suppliers</u>") vary somewhat, but are remarkably similar, and can be illustrated as follows:

a. A Supplier provides Pettit a credit line to purchase fuel arranging for payments to the Supplier automatically withdraws payment by ACH from the Pettit's account on the 10th day (or first subsequent banking business day) after fuel is loaded into Pettit's tank trucks at the Supplier's depot.

b. Pettit's tank trucks load fuel 24 hours a day, 7 days a week, from a Supplier's depot (this is repeated by different trucks drawing additional loads from the Supplier throughout the day, and in turn, this process is repeated every day), each time generating an ACH request;

DECLARATION OF CHRIS SATHER IN SUPPORT OF EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN POSSESSION FOR AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION FUEL AND LUBRICANT SUPPLIER CHARGES, (II) PAY PRE-PETITION AND POST-PETITION COMPENSATION, PAYROLL TAXES, AND OTHER RELATED EXPENSES AND (III) DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS AND HONOR PAYMENTS - 3

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-47285-PBS    Doc 3    Filed 11/25/13    Ent. 11/25/13 15:01:54    Pg. 3 of 7

c. Pettit's tank trucks in turn supply Pettit's customers 24 hours a day, 7 days a week;

d. The 10th day (or first subsequent banking business day) after the fuel is drawn, the Supplier automatically withdraws payment by ACH from the Pettit's account.

12. As the Pettit learned recently when their working capital lender, Key Bank, N.A., erroneously did not process a Supplier's ACH one evening, by 10 a.m. the following morning, when the Supplier learned it had not been paid, the Supplier immediately terminated Pettit's access to the Supplier's fuel for five (5) business days until payment was made by wire transfer and a review of the company's creditworthiness was complete. The Supplier actually did direct Pettit's tank trucks, waiting at the Supplier's depot to load fuel and meet their daily delivery schedule to customers, out of line and they were unable to load fuel. In this instance, only when the company's Corporate Controller contacted the Supplier to convey the circumstances for the error **and** promptly made good on payment did the Supplier permit the Pettit to begin to load fuel; however, the company's purchasing capacity was reduced from $1,800,000 to $900,000.

13. To prevent the immediate and irreparable harm that would result from the inability to pay these Suppliers daily, including for the obligations incurred to them with in sixty (60) days prior to the Petition Date, Pettit seeks entry of an order authorizing Pettit to pay the prepetition claims of such Suppliers (the "Suppliers' Claims"). The reason for the sixty day period is because the suppliers that provide lubricants operate on a sixty day payable. A failure to pay the Suppliers would result in the Suppliers refusing to provide fuel and lubricants to Pettit's post-petition. Any alternate suppliers that may exist would impose standard terms, that

DECLARATION OF CHRIS SATHER IN SUPPORT OF EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN POSSESSION FOR AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION FUEL AND LUBRICANT SUPPLIER CHARGES, (II) PAY PRE-PETITION AND POST-PETITION COMPENSATION, PAYROLL TAXES, AND OTHER RELATED EXPENSES AND (III) DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS AND HONOR PAYMENTS

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

PAGE 4

Case 13-47285-PBS    Doc 3    Filed 11/25/13    Ent. 11/25/13 15:01:54    Pg. 4 of 7

the Pettit simply could not meet (for example, new L/Cs for the full amount of the requested credit line).

Pettit's request intentionally is surgical, not scattershot. Pettit's request to pay suppliers for prepetition obligations is limited to the four (4) major suppliers which have supplied fuel and lubricants within the twenty (60) days before the Petition Date that require payment in order to maintain supply to Pettit. Pettit proposes to condition the payment of each Supplier on the agreement of the individual Supplier to continue supplying fuel and lubricants (as applicable) to Pettit on terms that are as or more favorable to Pettit as the existing terms, practices, and programs in effect between the Supplier and Pettit in the twelve (12) months prior to the Petition Date (the "<u>Customary Trade Terms</u>"), or such other trade terms as are agreed to by Pettit and the Supplier.

Pettit firmly believes that authority to pay the Suppliers is vital to their reorganization efforts. If this Motion is not granted, Pettit believes that it will lose access to the fuel and lubricants they distribute and that many, if not all, of the suppliers will stop doing business with Pettit altogether. The loss of these Suppliers would cause immediate and irreparable damage to Pettit, Pettit's customers and Pettit's estates.

The continued availability of fuel and lubricants in amounts and on terms consistent with Pettit's prepetition trade terms is advantageous to Pettit because it allows Pettit to preserve working capital while maintaining their customers and revenues. Conversely, a disruption in Pettit's access to fuel and lubricants, even for a brief period of time, would entirely devastate the Pettit's business operations, by immediately and dramatically increasing Pettit's working capital need and immediately and substantially impairing Pettit's ability to serve their customers.

DECLARATION OF CHRIS SATHER IN SUPPORT OF EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN POSSESSION FOR AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION FUEL AND LUBRICANT SUPPLIER CHARGES, (II) PAY PRE-PETITION AND POST-PETITION COMPENSATION, PAYROLL TAXES, AND OTHER RELATED EXPENSES AND (III) DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS AND HONOR PAYMENTS

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-47285-PBS    Doc 3    Filed 11/25/13    Ent. 11/25/13 15:01:54    Pg. 5 of 7

Pettit's customer base, as well as Pettit's opportunities for a successful reorganization, would be placed at grave risk.

Pettit requires use of prepetition bank accounts and that these Banks honor prepetition payments to suppliers of Pettit because authorizing these payments to suppliers is critical for Pettit's continued operation and overall reorganization. Pettit's customers include franchised service stations, retailers, agricultural producers, families, counties and other municipalities among others. Pettit has maintained these customers because they have served them without interruption through adverse weather conditions. These customers require consistent and continuous supply, seven days a week. Because the customers' needs are quite literally incessant, Pettit cannot maintain its customer base without daily purchases and deliveries of fuel and lubricants.

Any interruption in the supply of fuel and lubricants to Pettit would, within less than 24 hours, result in interruption of deliveries to these customers. Interruptions in deliveries would be very likely to result in the immediate and irreparable loss of customers, and significant damages to those customers' operations. These customers are vital to Pettit's survival.

14. Pettit employs 125 full-time employees with an average monthly payroll of $725,000 including associated payroll taxes and company-sponsored health benefit premiums.

15. Pettit's employees are paid twice a month. The next regular payroll date is December 6, 2013. Employees were paid their wages through November 15th, 2013, prior to the filing of the Petition. Because the Petition Date was November 25, 2013, Pettit has incurred unpaid prepetition obligations for wages, salaries, expenses, commissions and other employment

DECLARATION OF CHRIS SATHER IN SUPPORT OF EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN POSSESSION FOR AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION FUEL AND LUBRICANT SUPPLIER CHARGES, (II) PAY PRE-PETITION AND POST-PETITION COMPENSATION, PAYROLL TAXES, AND OTHER RELATED EXPENSES AND (III) DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS AND HONOR PAYMENTS

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

PAGE 13

Case 13-47285-PBS    Doc 3    Filed 11/25/13    Ent. 11/25/13 15:01:54    Pg. 6 of 7

compensation and benefits for the period prior to the Petition Date, including, but not limited to, vacation or other paid time off.

16. The total amount Pettit is required to pay on December 6, 2013 for the accrued and unpaid prepetition wages, salaries, expenses, commissions, compensation, taxes, and benefits is approximately $740,000. No individual is owed more than $12,000 for prepetition wages, salaries, commissions or other compensation, including benefits. Pettit does not request authority to pay any person more than the $4,600.00 to any one person which would exceed their priority claim as provided by 11 U.S.C. §§ 507 (a)(4) and (a)(5). All payroll figures in sections 14, 15 and 16 are based on prepetition payroll totals. The company will reduce personnel and payroll from the second half of November onwards by over $60,000 per month.

I declare under penalty of perjury and the laws of the State of Washington that the foregoing is true and correct.

DATED this 25th day of November, 2013, in Lakewood, Washington

*/s/ Chris Sather*
Chris Sather
President Pettit Oil Company

DECLARATION OF CHRIS SATHER IN SUPPORT OF EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN POSSESSION FOR AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION FUEL AND LUBRICANT SUPPLIER CHARGES, (II) PAY PRE-PETITION AND POST-PETITION COMPENSATION, PAYROLL TAXES, AND OTHER RELATED EXPENSES AND (III) DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS AND HONOR PAYMENT

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-47285-PBS    Doc 3    Filed 11/25/13    Ent. 11/25/13 15:01:54    Pg. 7 of 7