Below is a Memorandum Decision of the Court.

_____
**Paul B. Snyder
U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

In re:

**PETTIT OIL COMPANY,**

Debtor.

**Case No. 13-47285**

**MEMORANDUM DECISION DENYING TRUSTEE'S MOTION TO VACATE PURSUANT TO FED. R. CIV. P. 60(b)(4)**

This matter came before the Court on September 29, 2015, on a motion filed by the Chapter 7 Trustee (Trustee) for the estate of Pettit Oil Company (Debtor) to vacate and void critical vendor orders pursuant to Fed. R. Civ. P. 60(b)(4) (Motion to Vacate). The orders at issue are found on the docket at ECF Nos. 26, 50, and 101 (collectively "Supplier Orders"). Objections were filed by Tesoro Refining & Marketing Company LLC (Tesoro), IPC (USA), Inc. (IPC), and U.S. Oil & Refining Co. (US Oil) (collectively "Objecting Suppliers"). Phillips 66 Company (Phillips) filed a response in support of the Trustee's Motion to Vacate. The Court took the matter under advisement. Based on the evidence, arguments of counsel, and pleadings submitted, the Court makes the following findings of fact and conclusions of law.

The Debtor filed a Chapter 11 bankruptcy petition (Petition) on November 25, 2013 (Petition Date). That same day, the Debtor filed emergency "first day" motions seeking, among other matters, authority to use cash collateral and to pay certain prepetition fuel and lubricant

supplier charges (Motion to Pay Suppliers). An emergency hearing was noted for the following day, November 26, 2013, two days before the Thanksgiving holiday.

This was a "short" petition filing, in that the Petition was filed without completed schedules or statement of financial affairs. The creditor matrix filed with the Petition listed 36 creditors. The proof of service for the Motion to Pay Suppliers indicates that the Debtor faxed and/or e-mailed notice of the motion to the U.S. Trustee (UST), federal and state attorneys general, the Internal Revenue Service (IRS), and approximately 20 entities (excluding duplicates) that appear to be major creditors.

The Motion to Pay Suppliers stated:

> Notice of this Motion has been provided to (i) the office of the United States Trustee for Region XXI; (ii) each of the Debtor's known secured lenders; (iii) the Suppliers; (iv) the additional creditors identified on by Debtor's as the potential list of twenty (20) largest unsecured creditors; (v) other known claimants having liens or security interests in property of the Debtor; (vi) the Internal Revenue Service; and (vii) the United States Department of Justice. In light of the nature of the relief requested, the Debtor submit [sic] that no other or further notice is necessary.

Motion to Pay Suppliers 16:7-12, ECF No. 2.

In the Motion to Pay Suppliers, the Debtor sought to pay certain suppliers, set forth in an attached Exhibit A, the obligations incurred by them within 60 days prior to the petition date.[1] The suppliers to be paid were: Conoco Phillips in the amount of $95,452.47, US Oil in the amount of $103,353.19, Chevron Texaco in the amount of $79,482.39, and Tesoro in the amount of $454,010.38. The Debtor's President, Chris Sather, filed a declaration in support of the Motion to Pay Suppliers.

---

[1] The Motion to Pay Suppliers contain an inconsistency in that it indicates an intent to pay obligations incurred within "twenty (60) days" prior to the petition date. Motion to Pay Suppliers 7:17, ECF No. 2. Based on the declaration filed in support, it appears that the intent was 60. See Sather Decl. 4:17-20, ECF No. 3. Regardless of the original intent, the Court limited payment to obligations incurred within 20 days pursuant to 11 U.S.C. § 503(b)(9).

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 2

Responses were filed by KeyBank National Association (KeyBank), and U.S. Bank National Association, Successor to Bank of America National Association, Successor by Merger to LaSalle Bank National Association, as Loan Pool Trustee for EMAC Owner Trust 1999-1 (EMAC). IPC also filed an objection, arguing that it was also entitled to payment as a § 503(b)(9)[2] creditor. IPC alleged that it was owed $103,000 (subject to future verification) for oil supplies delivered to the Debtor less than 20 days prior to the commencement of the case.

The emergency hearing was held on shortened time on November 26, 2013. The following parties participated: the Debtor, EMAC, KeyBank, US Oil, the UST, Tesoro and IPC. At the hearing, the UST raised concerns about the lack of notice to unsecured creditors. See Transcript Nov. 26, 2013 Hearing 21:19-22:10 and 23:22-24:1, ECF No. 925. The Court also raised lack of notice and due process concerns. See id. at 44:24-45:5, ECF No. 925.

The resulting interim order entered November 27, 2013 (First Order), approved payment to those suppliers identified in attached Exhibit A, for product supplied only within 20 days of the Petition Date. The First Order states that payments should "only be what is sufficient to preserve the status quo, subject to the 20 days limit under section 503(b)(9), until the next hearing." First Order 4:21-23, ECF No. 26. The First Order set a further hearing for December 5, 2013.

On December 2, 2013, the Debtor filed additional schedules to its Petition and a List of 20 Largest Unsecured Creditors. The UST filed a response on December 2, 2013, requesting:

> [I]f the Court is inclined to authorize further use of cash collateral and/or payment of prepetition claims of the Suppliers beyond December 5, 2013, the Court not enter final orders at this time, but rather grant only such further interim relief as is necessary and appropriate to preserve the status quo until an unsecured creditors' committee is appointed and the Committee has had an adequate opportunity to employ counsel and respond to the Motions.

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

**Below is a Memorandum Decision of the Court.**

UST Resp. 2:20-3:3, ECF No. 34.

The Debtor filed a notice of hearing for the continued motions on December 3, 2013. The proof of service indicates that notice of the continued hearing was faxed and/or e-mailed to the listed parties on December 3, 2013.

Appearing at the December 5, 2013 hearing were the Debtor, IPC, KeyBank, EMAC, Tesoro, US Oil, Chevron and the UST. A second interim order (Second Order) was entered after this hearing. See ECF No. 50. The Second Order is substantially similar to the First Order. The Second Order scheduled a subsequent hearing on the Debtor's Supplier Motion for December 19, 2013.

On December 11, 2013, the Debtor filed a Motion for Administrative Order Limiting Number of Recipients of Future Notices. The motion was also noted for hearing on December 19, 2013. The motion was withdrawn by the Debtor on December 19, 2013.

According to the proof of service filed on December 12, 2013, notice of the above hearings was mailed, faxed or e-mailed to the listed parties that same date. The proof of service also indicates that notice was provided to all creditors on the attached mailing matrix. A mailing matrix was not attached as stated.

On December 16, 2013, counsel for Phillips filed a Request for Special Notice. On December 17, 2013, a Request for Special Notice was also filed by counsel for the State of Washington, Department of Revenue (State of Washington).

On December 18, 2013, Phillips filed a Response to Cash Collateral and Critical Supplier Motions and Demand for Payment. It indicated that despite being listed in both the First and Second Orders as a supplier authorized to receive payment under § 503(b)(9), it had not received any funds. Phillips also alleged that it first learned of the Debtor's bankruptcy filing on November 27, 2013. Phillips Resp. 1:26-27, ECF No. 84. Phillips requested

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 4

assurance of prompt payment of its § 503(b)(9) and postpetition administrative claims. On December 19, 2013, Phillips filed a Motion for Allowance of Post-Petition Claim and 503(b)(9) Claim and Request for Payment.

A hearing on the continued motions was held December 19, 2013. Appearing at this hearing was the Debtor, IPC, KeyBank, EMAC, Commercial Fueling Network (CFN), Phillips, Tesoro, Chevron and the UST. The Court scheduled the next hearing on the Debtor's Motion to Pay Suppliers for January 9, 2014. A Third Interim Order (Third Order) was entered on December 20, 2013. See ECF No. 101. The Third Interim Order is substantially similar to the previous two orders.

On December 30, 2013, the Debtor filed a notice of hearing for the continued motions. A proof of service was filed on December 31, 2013, indicating that the notice of hearing was mailed to the parties on the attached matrix on December 31, 2013.

On December 31, 2013, the State of Washington filed a motion to appoint a trustee or dismiss the Debtor's case for conversion of trust funds, indicating a hearing date of January 9, 2014.

On January 3, 2014, the Debtor filed a Chapter 11 Status Report (Status Report), to which it attached an Exhibit A: Payments to Critical Suppliers Detail. According to the Status Report, the Debtor had paid $2,197,836.87 to suppliers for product supplied within 20 days prior to the Petition Date. Specifically, the Debtor indicated that it paid Tesoro $1,656,511.77, US Oil $393,145.78, and IPC $148,179.32. For amounts delivered postpetition, the Debtor stated that it paid Phillips $342,629.22, Chevron $301,155.50, IPC $224,134.94, Tesoro $2,777,131.86, and U.S. Oil $3,247,466.53. Status Report, Ex. A, ECF No. 128.

On January 7, 2014, the UST filed a response to several motions, including the Motion to Pay Suppliers, pending for January 9, 2014. The UST objected to the Motion to Pay Suppliers because it appeared from the information provided in the Status Report "that such

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 5

suppliers have been treated disparately without any further explanation." UST Resp. 3:13-14, ECF No. 134.

The following parties appeared at the hearing held on January 9, 2014: the Debtor, IPC, KeyBank, EMAC, Phillips, the State of Washington, and the UST. The minute entry indicates that the hearing on the Motion to Pay Suppliers was further continued to January 16, 2014. Another interim order, however, was never entered.

An Order Allowing Administrative Claims of Phillips 66 and Requiring Payment was entered on January 10, 2014. This order provides that Phillips shall have an allowed administrative claim of $226,000 for postpetition deliveries, and an allowed § 503(b)(9) claim in the amount of $898,219.06. Both claims were only to be paid upon further order of the Court after notice and hearing.

At the hearing held on January 16, 2014, the case was converted to Chapter 7. An Order Converting Chapter 11 Case to Chapter 7 Effective January 17, 2014, at 2:00 p.m. Pacific Time was entered on January 17, 2014. The Trustee was appointed on January 17, 2014. The Trustee filed the current motion on August 14, 2015, seeking to vacate the Supplier Orders pursuant to Fed. R. Civ. P. 60 (b)(4) (Rule 60(b)(4)).

Rule 60(b)(4) is made applicable to bankruptcy cases by Rule 9024 and provides for relief from a final order or judgment if the judgment is void. The Objecting Suppliers raise the procedural issue of whether the Motion to Vacate should have been filed as an adversary proceeding, under Part VII of the Rules. The Court, however, agrees with the Trustee that this matter is properly before the Court. The Trustee is merely seeking to void the Supplier Orders. The Trustee stated that she is not seeking to recover funds paid to the Objecting Suppliers. If, however, the Trustee is successful, she agrees that an adversary proceeding will be necessary to obtain turnover of these funds. Issues concerning the Objecting Suppliers' entitlement to recoupment would also need to be resolved in the adversary proceeding.

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 6

The Objecting Suppliers also contend that the Trustee does not have standing to file the Motion to Vacate on behalf of the creditors. Again, the Court disagrees. Although it is correct that the interests of the various creditors are not identical, it is the Trustee's responsibility to collect property of the estate for distribution to creditors. See, e.g., § 704. This includes objecting to the allowance of claims and pursuing the recovery of estate property through turnover, preference and avoidance actions. See § 502 and § 542 – § 550. In seeking to vacate the Supplier Orders, the Trustee is fulfilling her duties imposed by the Bankruptcy Code. The Trustee in her Motion to Vacate is attempting to recover funds for distribution to creditors that were paid from estate property by seeking to void the orders that initially permitted the distributions. The Trustee has established standing to bring the Motion to Vacate.

Substantively, the Trustee alleges that the Supplier Orders are void for lack of due process under the Fifth Amendment to the U.S. Constitution (Fifth Amendment). The Fifth Amendment provides that no person shall "be deprived of life, liberty or property, without due process of law." The Ninth Circuit Court of Appeals (Ninth Circuit) has recognized that a bankruptcy court order may be set aside as void under Rule 60(b)(4) for a violation of the due process clause of the Fifth Amendment. In re Center Wholesale, Inc., 759 F.2d 1440, 1448 (9th Cir. 1985). The Trustee bears the burden of establishing entitlement to relief under Rule 60(b)(4). In re La Sierra Fin. Servs., Inc., 290 B.R. 718, 732 (9th Cir. BAP 2002). Thus, in order to void the Supplier Orders under Rule 60(b)(4), the burden is on the Trustee to establish that entry of the Supplier Orders (1) deprived a party of property and (2) that this property interest was deprived without due process of law.

The Court will first address the issue of whether the notice provided satisfied due process. To meet the constitutional requirements of due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 7

**Below is a Memorandum Decision of the Court.**

action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

In evaluating whether the notice provided meets due process requirements, the Court must "examine the notice's adequacy in light of the Bankruptcy Code's statutory requirements, safeguards, and remedies." Center Wholesale, 759 F.2d at 1448. As the Ninth Circuit further explained, "because the adequacy of notice depends upon the factual context in which it is given, we need to examine its timeliness and specificity in light of the Bankruptcy Code provisions governing [the Debtor's] actions." Center Wholesale, 759 F.2d at 1448.

Bankruptcy proceedings, and Chapter 11 cases in particular, are unique in that immediate relief is often necessary to prevent irreparable harm to a debtor, before complete notice can be given. The Bankruptcy Code and Rules are specifically designed to allow relief in limited circumstances without requiring complete notice. Typically, relief without full notice can be granted upon a showing that it is "necessary to avoid immediate and irreparable harm." See, e.g., Rule 6003 (authorizing payment of all or part of a claim that arose before the filing of the petition, within 21 days after filing, "to the extent that relief is necessary to avoid immediate and irreparable harm") and Rule 4001 (authorizing use of cash collateral as is "necessary to avoid immediate and irreparable harm" at a preliminary hearing.)

The Code specifically recognizes that notice is a flexible concept. Section 102(1)(A) provides that the phrase "notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."

The Debtor filed this case under dire circumstances on November 25, 2013. At the time of filing, the Debtor was a distributor of bulk oil, gas, diesel and lubricant products and owned and operated a business that provided petroleum products to "over 10,000 customers, transportation companies, industrial goods and services producers, retailers, agricultural

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 8

producers, families, military installations, counties and other municipalities." Motion to Pay Suppliers 4:6-9, ECF No. 2.

The Debtor filed Chapter 11 with the intent to reorganize its debts so that it could continue its operations. At the time of filing, the Debtor had credible evidence that its suppliers would cease providing fuel unless their prepetition claims were paid. Without such supplies, the Debtor would have to cease operations immediately to the substantial harm of the Debtor's customers, clients and approximately 180 employees. The Debtor's emergency motion filed with the Petition was supported by a declaration of the Debtor's president. In his declaration, he specifically detailed the likelihood that its suppliers would cease providing oil if not paid and the harm that would result if there was any disruption of the fuel supply to its customers. Sather Decl. 3:9-5:23, ECF No. 3.

A hearing on the emergency motion was scheduled for the following day. Although notice to all creditors on such shortened time was not possible, the Debtor did provide notice by fax or e-mail to those creditors that initially appeared to hold the majority of claims. Many of these creditors, as well as the UST, appeared at and participated in the November 26, 2013 hearing.

KeyBank had the most at stake financially, as it had a security interest in all of the Debtor's assets, including accounts receivables and inventory. EMAC was the other secured lender. KeyBank appeared at the hearing and specifically acknowledged that payment to the suppliers was necessary to continued operations. Counsel for KeyBank stated:

> Our concern about that is – and I assume – the debtor has now told us that the fuel suppliers will not supply fuel to the debtor unless they pay that unsecured amount. So Key Bank – if that is the case – if that, in fact, is the case, then Key Bank would agree that those fuel suppliers are important, and they should be paid.

Transcript Nov. 26, 2013 Hearing 10:20-25, ECF No. 925.

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 9

**Below is a Memorandum Decision of the Court.**

The Court was also concerned about the lack of notice and balanced this against the exigencies of the case in granting relief. Precisely because of the due process concerns, the Court granted only interim relief and limited authorization to payment of prepetition claims that were entitled to administrative priority as incurred within the 20-day period of § 503(b)(9). The Court granted limited relief for nine days and set the next hearing for December 5, 2013. The Court described the intention of the order as follows:

> What we're trying to do is keep the suppliers, not necessarily current, but not falling any farther behind for a week. That's all this is doing. So if they want [a supplier's] oil, they're going to have to pay enough so that [the supplier doesn't] fall further behind.

Transcript Nov. 26, 2013 Hearing 43:13-17, ECF No. 925.

Each of the parties present at the November 26 hearing, including the Court, were aware that notice of the hearing was most likely not provided to a majority of creditors. However, because the Debtor needed immediate relief in order to continue operations, the Court determined that relief without complete notice was necessary. The Court concludes that the notice provided for the November 26 hearing was "appropriate in the particular circumstances."

These facts are also true for the second hearing held on December 5, 2013. Again, although notice was clearly not perfect, and perhaps even worse than represented by counsel for the Debtor, due to the short time constraints, complete notice would have been difficult.

According to the Trustee, the parties allegedly "harmed" by the Supplier Orders are the approximately 1,039 home oil customers (Home Oil Customers). Even if the Debtor had a complete list of such customers at the time of filing, however, it is not probable that notice could have been provided to all of these customers prior to either the November 26 or December 5 hearings. The bankruptcy filing appears to have been necessitated by a complete breakdown

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 10

in continued financing by the major lenders and suppliers, and the Debtor was clearly not prepared to file its bankruptcy when compelled to on the Petition Date.

It is also important to recognize that despite adequate notice concerns, no party has taken issue with the fundamental proposition that the Debtor would have been forced to immediately cease operations if a supply of fuel had not been secured. This would have caused a cessation in the supply of home heating oil to its customers during a particularly cold end of November, early December. The Trustee's Motion to Vacate also discounts the reality of an emergency Chapter 11 filing and the limited options given the circumstances. The Court could either grant the relief and allow the Debtor to continue to operate and attempt to reorganize, or deny the relief until full notice was given and force the Debtor to shut down. The latter option is contrary to the rehabilitative goals of a Chapter 11 filing and was not required by case law or the Bankruptcy Code or Rules. Despite due process concerns, the Court concluded that under the exigent circumstances of the case, the notice provided by the Debtor was adequate. The First Order in fact contains a specific finding that the "relief requested in the Motion is in the best interests of Debtor, its estates, creditors and all other parties in interest" and that "adequate and proper notice of the Motion and hearing thereon has been given." First Order 2:10-12, ECF No. 26. Each of the subsequent orders contains a similar finding. See Second Order 2:10-12, ECF No. 51; Third Order 2:10-12, ECF No. 101.

The Trustee appears to concede that entry of interim orders is permissible. She acknowledged in her pleadings and at the hearing that emergency first day orders are allowable and that perfect notice may not exist early in the case. According to the Trustee, the problem is that a final hearing with full notice never occurred. The reason there was never a final hearing, however, is that the Debtor was unable to reach a final agreement with its secured lenders and the case was converted to Chapter 7.

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 11

Based on the circumstances that existed at the time, authorizing limited payment on § 503(b)(9) claims was the best option available that would allow the Debtor to temporarily continue its operations, the Debtor's employees to be paid, and the Home Oil Customers to continue to receive product. At least as to the First and Second Orders, the Court concludes that the notice provided was appropriate under the circumstances.

By the time the Third Order was entered, the Court acknowledges that the circumstances had changed. The Third Order was entered after a hearing held on December 19, 2013, which is approximately three and a half weeks after the Petition was filed. The Court agrees that additional notice should have been provided of that hearing. Although more creditors were served with notice of this hearing than of the prior two hearings, the list of impacted parties requiring notice was still far from complete. By day 24 post filing, the Debtor had sufficient time to provide, if not perfect, notice to a substantial number of interested parties, and this did not occur. For instance, the Debtor failed to send notice of the December 19, 2013 hearing to nine of its 20 largest unsecured creditors and only 23 additional creditors from the mailing matrix received notice of this hearing. The Trustee has established that the notice provided of the December 19, 2013 hearing was not appropriate in the particular circumstances.

In order to find a due process violation that would render the Supplier Orders void, however, the Trustee must also establish that the Debtor's failure to give adequate notice deprived the affected creditor of property. As stated above, the Court finds that notice of the November 26 and December 5, 2013 hearings was adequate under the exigent circumstances and that notice of the December 19, 2013 hearing was deficient. Even if the Court is incorrect and notice of all three hearings was deficient, the resulting orders are not void, however, because the Trustee has not met her burden of proof in establishing that any property rights were affected.

**Below is a Memorandum Decision of the Court.**

At the September 29, 2015 hearing, there was disagreement over whose property rights were said to be violated. The Trustee's Motion to Vacate originally asserted that the Supplier Orders are void because they violated the due process of all unsecured creditors. The Trustee appears to now acknowledge that this allegation was too broad. KeyBank was secured in all of the Debtor's assets, including cash, accounts receivable and inventory as of the Petition Date. A preponderance of the evidence indicates that KeyBank was undersecured at the time of the hearing and pursuant to its proof of claim, remains so today. Accordingly, none of the funds paid to the Objecting Creditors pursuant to the Supplier Orders would ever have been available to pay general unsecured claims. Such prepetition unsecured claims would be junior in priority to the § 503(b)(9) and all other administrative claims that are admittedly considerable. Thus, there is no evidence that payment pursuant to the Supplier Orders affected any property interest of the general unsecured creditors. Accordingly, the Trustee is unable to establish that these general unsecured creditors, many of whom admittedly did not receive notice of any of the hearings, had a property interest in funds distributed to the Objecting Suppliers.

The Trustee appears to now distinguish between general unsecured claims and those of Home Oil Customers. According to the Trustee, some of the Home Oil Customers continued to make payments to the Debtor postpetition. These creditors may hold an administrative claim for the funds paid postpetition that is entitled to the same priority as the suppliers' § 503(b)(9) claims. Nevertheless, the majority of Home Oil Customers appear to be prepetition general unsecured creditors, who as indicated above, would never have received any of the supplier funds. The Court is therefore only addressing the issue of whether the due process rights of Home Oil Customers with administrative claims were violated. According to the Trustee, based on the claims filed, the postpetition payments made by Home Oil Customers total $28,977.83, and the postconversion payments total $20,252.71. Ellis Supp. Decl. 2:6-12, ECF No. 957.

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 13

For ease of reference, the Court will refer to the Home Oil Customers with administrative claims as "Priority Home Oil Customers."

The Court concludes that the Trustee has failed to establish that the due process rights of the Priority Home Oil Customers were violated. The Trustee first argues that the Supplier Orders should be vacated because such orders have been expressly prohibited by the Ninth Circuit. The Trustee relies on the case of <u>Wetzel v. Goodman Oil Co. (In re B & W Enters., Inc.)</u>, 713 F.2d 534 (9th Cir. 1983). Typically, such an argument would be brought under Rule 60(b)(1), which allows relief from an order due to a mistake of law. Presumably, relief was not sought under Rule 60(b)(1) because it would be untimely as not made within a year of the orders entry. Instead, the Trustee relies on the <u>B & W Enters.</u> case as a basis for voiding the Supplier Orders under Rule 60(b)(4), which is not time barred. The Trustee puts forth a creative argument that the Supplier Orders should be vacated because if adequate notice would have been given, the "un-noticed creditors could have objected and cited binding Ninth Circuit precedent law that bars the entry of critical vendor orders as a matter of law." Tr. Reply 5:19-24, ECF No. 955.

The Court disagrees with this argument on several levels. Initially, the Court disagrees that <u>B & W Enters.</u> holds that entry of an order allowing payment to a § 503(b)(9) supplier is prohibited. <u>B & W Enters.</u> is distinguishable in that § 503(b)(9) was not at issue. Instead, the debtor was seeking entry of an order that would allow payment to a creditor supplier of prepetition debt incurred beyond the 20 day limit of § 503(b)(9), pursuant to two equitable rules that the Ninth Circuit properly determined were only applicable to railroad cases. The debtor also made such payments without notice, a hearing, or any authorization from the court. The bankruptcy court authorized the trustee to avoid such payments and both the district court and Ninth Circuit affirmed.

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 14

As B & W Enters. is distinguishable, it is not correct that the Court would not have entered the Supplier Orders if the "un-noticed" creditors would have had the opportunity to present this case at the hearings. In addition, although this specific case was not cited, presumably because it is distinguishable, the Court was aware of Ninth Circuit, as well as Seventh Circuit caselaw, regarding "critical vendor" orders when the Supplier Orders were entered. For instance, the parties discussed In re Kmart Corp., 359 F.3d 866 (7th Cir. 2004), at the hearing. See Transcript November 26, 2013 Hearing 22:11-24, ECF No. 925. Cognizant of circuit law, the Court was only willing at that time to grant interim relief, which it limited to payment of § 503(b)(9) claims incurred within 20 days of the petition as necessary to keep the Debtor operating, and limited the time that the Debtor was able to operate under these interim orders. This is also consistent with In re Adams Apple, Inc., 829 F.2d 1484 (9th Cir. 1987), where the Ninth Circuit held that it is permissible to treat prepetition debts unequally when necessary for rehabilitation. Adams Apple, 829 F.2d at 1490.

The Trustee next argues that if the Priority Home Oil Customers were provided notice they would have ceased making payments to the Debtor. This seems unlikely, however, as it was the middle of winter and the Home Oil Customers presumably would have chosen for product to continue to be delivered, at least until such time as a different home heating supplier could have been obtained. In addition, the Trustee has failed to provide any evidence establishing a connection between the lack of notice of the Motion to Pay Suppliers and the Priority Home Oil Customers' decision to continue submitting payments. Further, to show an injury, the Trustee must establish that the Priority Home Oil Customers did not receive oil of equivalent value to the postpetition payments made. The Trustee has failed to meet her burden of proof.

In addition, as set forth above, the evidence indicates that KeyBank is undersecured. Thus, no funds would have been available to pay the Priority Home Oil Customers' claims,

assuming notice had been provided. The Trustee argues that even if KeyBank is undersecured, the Priority Home Oil Customers' property rights were affected by the supplier payments because none of those funds constituted KeyBank's pre and/or postpetition cash collateral. According to the Trustee, such funds were not KeyBank's cash collateral because the Debtor was specifically prohibited from utilizing these funds. See Bailey Decl. ECF No. 958.

The Trustee's argument is based on her analysis of KeyBank's cash collateral as it existed as of the Petition Date. According to the Trustee, the funds paid to the Objecting Suppliers were necessarily unencumbered funds, because pursuant to the cash collateral orders, "the only cash available for use by the Debtor was cash in excess of KeyBank's collateral base." Tr. Reply 11:3-4, ECF No. 955. The Court disagrees. Although the value of KeyBank's cash collateral was stated at $9.3 million, it maintained a first position security interest and postpetition replacement lien in all of the Debtor's inventory and accounts receivable. The cash collateral orders specifically gave KeyBank a replacement lien upon all assets and property of the Debtor of the same "category, kind, type, character and description as were subject to perfected and valid security interests and liens in existence as of the Petition Date." Interim Order Authorizing Limited Use of Cash Collateral 4:12-13, ECF No. 25. Thus, in order for the Trustee to establish that the Priority Home Oil Customers were harmed, she would have to establish that such funds would have, but for the supplier payments, been available to pay their claims. She has failed to meet that burden.

There is nothing in the record to indicate that KeyBank has been paid in full or that it at any time was oversecured. In fact, there is evidence to the contrary. KeyBank filed Proof of Claim No. 391 on July 5, 2014, stating that the amount of its claim as of the Petition Date was $10,636,861.81. According to the attached Schedule 1, the total amount of the claim owing as of June 2, 2014, was $4,144,644.22. KeyBank had therefore been paid approximately $6

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 16

million and over $4 million remained owing. It is the final analysis that is relevant, and there is no evidence that any of the Home Oil Customers would ever have received a distribution from these funds. Furthermore, the Objecting Suppliers were paid from cash available in accordance with orders entered within a few days of the filing. It is likely that most of these funds would have been prepetition cash secured by KeyBank. The Trustee has therefore not established that any creditor had a right to be paid funds from KeyBank's cash collateral, absent KeyBank's consent. KeyBank consented to payment of the suppliers' § 503(b)(9) claims, and presumably did so because it agreed that payment was necessary to keep the Debtor operating.

The Trustee has also failed to establish that any of the Priority Home Oil Customers' claims came into existence prior to payment to the suppliers. Although the Trustee submitted evidence that a total of $28,977.83 in postpetition and pre-conversion payments were made by Home Oil Customers, no evidence has been provided as to when such payments were made. The burden is on the Trustee to establish a due process violation and she has failed to meet this burden. The above analysis concerning Priority Home Heating Customers also applies to those similarly situated contract parties and claimants identified by the Trustee as holding unpaid Chapter 11 administrative expense claims. See Ellis Decl., Ex B, ECF No. 957.

This is an unfortunate case for many reasons. It is unfortunate that the Debtor was unable to reorganize and it is unfortunate that there are insufficient funds to pay all of the unsecured or administrative claims of the 1,039 home heating oil customers, and remaining administrative claimants. It is not unusual, however, for a Chapter 11 case to fail and be administratively insolvent.

Lastly, the Court must address the issues addressed by Phillips. Phillips is in a unique position because it appears to be a § 503(b)(9) creditor, yet did not receive payment of its § 503(b)(9) claim when the other suppliers were paid. Phillips indicates that it has an allowed

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 17

administrative claim of $898,219.06 pursuant to § 503(b)(9) and an administrative claim of $226,000 for postpetition fuel deliveries to the Debtor. Phillips requests that the payments made pursuant to the Supplier Orders be equalized so that it receives payment pro rata with the other § 503(b)(9) suppliers.

Although it is unfortunate and unknown why Phillips was not paid at the same time as the other suppliers, it is not a basis for voiding the Supplier Orders. The Supplier Orders provided for payment to Phillips as a supplier to be paid, as it was listed on Exhibit A to each of the interim orders. Because the orders provided for payment, Phillips' property interest was not negatively impacted by them. The fact that Phillips did not receive payment is a fault of the Debtor, not a deficiency of the Supplier Orders.

Although Phillips may not have received initial notice of the bankruptcy filing, it is also undisputed that notice was received by November 27, 2013. It received notice of the proceedings from that point forward and in fact, sought and was successful in obtaining an additional order specifically authorizing payment. Unfortunately, the Debtor did not make the payment as authorized by the Court's orders and the case was converted. The only motion currently before the Court is to vacate the prior orders under Rule 60(b)(4). Philips has failed to state any basis that would warrant relief on these grounds.

In conclusion, the Trustee has failed to establish that the notice provided was not appropriate under the circumstances, at least as to the First and Second Order, or the existence of a due process violation as to any of the Supplier Orders. There is no evidence that any individual or entity entitled to notice of the Supplier Motions held a property interest that was affected in any way by entry of the Supplier Orders or the payments made pursuant to such orders.

Accordingly, the Trustee's Motion to Vacate is denied.

///End of Memorandum Decision///

MEMORANDUM DECISION DENYING
TRUSTEE'S MOTION TO VACATE
PURSUANT TO FED. R. CIV. P. 60(b)(4) - 18